806 P.2d 562

**Louie SALANDRE, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 18882.**

Supreme Court of New Mexico.

Feb. 11, 1991.

Rothstein, Bennett, Daly, Donatelli & Hughes, Martha A. Daly, Santa Fe, David C. Serna, Albuquerque, for petitioner.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

RANSOM, Justice.

We granted certiorari in this "speedy trial" case because the opinion of the court of appeals implicated the allocation of burden of proof recently addressed in *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990). In *Zurla* we overruled that part of *State v. Tartaglia*, 108 N.M. 411, 773 P.2d 356 (Ct. App.), *cert. denied*, 108 N.M. 318, 772 P.2d 352 (1989) (*Tartaglia I*), which appeared to place the burden of persuasion on the defendant to show actual prejudice resulting from delay deemed "presumptively prejudicial." *See also Work v. State*, 111 N.M. 145, 803 P.2d 234 (1990) (applying *Zurla*). The court of appeals relied on *Tartaglia I* in its opinion in this case, and, after careful review of the record in light of *Zurla*, we conclude the court of appeals erred. We reverse.

On June 19, 1987, approximately fifteen minutes after leaving a dealership where he had bought a used motorcycle, Louie Salandre was stopped by a police officer for an alleged equipment violation. The police officer stated in her report that she instituted a search of Salandre's person and a leather tool pouch attached to the motorcycle. The officer stated she instituted the search after detecting about Salandre a strong odor that later, before a grand jury, she testified smelled "like a methamphetamine lab." In the police report she had said the odor "smelled like the white powdery substance" that she eventually found in a sealed zip lock bag contained in

a grey, closed sports bag within the leather tool pouch. Subsequent testing of the white powder identified it as methamphetamine.

The search of the motorcycle also revealed drug paraphernalia and weapons. Salandre was arrested. One day later he posted a $5,000 bond and was released. The police took his motorcycle to a wrecking yard for storage. Although no police hold was placed on the motorcycle, the police did impound its title papers.

At the time of his arrest, Salandre was subject to parole restrictions for a previous conviction. Subsequent to his arrest, Salandre stopped reporting to his parole officer because he feared his parole would be revoked in light of the charges pending against him. In October 1987, after his arrest for another traffic violation, Salandre's parole was revoked.

On January 13, 1988, while still incarcerated on his parole revocation, Salandre was indicted for possession of a controlled substance with intent to distribute, possession of a firearm by a felon, possession of drug paraphernalia, and unlawfully carrying concealed weapons. He was arraigned on February 1, and was released from custody on February 11, 1988. Defense counsel filed several pretrial motions on February 19, including a motion to dismiss for violation of Salandre's speedy trial and due process rights, a motion to suppress the evidence obtained in the search, a motion to test the officer's ability to smell methamphetamine "under the same conditions and circumstances in which the alleged methamphetamine in this case was found," and a motion to order the release of the title to the motorcycle and to identify the wrecking yard where it was stored.

The court granted this last motion after a hearing on April 5. That same day, the motorcycle mysteriously was stolen from the wrecking yard and left on railroad tracks where a train ran over and destroyed it. At a hearing on the speedy trial motion on May 19, Salandre claimed the loss of the motorcycle prevented him from demonstrating the pretextual nature of the traffic stop and impaired his ability to test

the officer's ability to smell the methamphetamine. Specifically, he claimed the destruction of the motorcycle prevented him from showing whether it had the type of defective equipment that would be visible to the officer, and thus impaired his ability to challenge the probable cause justifying the initial traffic stop. He also claimed the officer did not have probable cause to search because she could not have smelled the methamphetamine wrapped and concealed in the leather tool pouch on the motorcycle.

Additionally, Salandre testified that, during the period when he was attempting to evade his parole officer, he stopped seeing his girl friend and generally felt unable to move about freely. He stated he hoped to resolve the charges against him before reporting back to his parole officer. He testified further that, after several months passed, he had begun to believe that he would not be indicted on the pending charges and, when asked how he felt about the charges continuing to drag on unresolved, he stated: "[I]t is a burden to wait, on my mind, and it is slowing me down as far as my productivity, you know. There [are] things that I could be doing that I am not able to do."

Salandre's parents testified their son was unable to find work during the periods before and after incarceration on the parole revocation, except for part-time work in connection with the family watch repair business. Salandre testified on cross-examination, however, that he had applied for only one position subsequent to his release on February 11, 1988. Salandre also testified that he had not held a full-time position since 1982.

Testimony also was presented that, during the same general time period when he was arrested, Salandre had collaborated with his brother and father to produce and market a new type of weapon holster. Salandre claimed that, due to the bond restrictions on his movement, he was unable to attend a number of trade shows where he hoped to make business contacts. His parents testified, however, that most of these trade shows, if not all of them, took place

while he was incarcerated on the parole revocation. Salandre's parents and fiancee testified that he had been unable to attend several weddings during the time he was incarcerated.

The trial court found that the delay in prosecuting Salandre was unjustified and excessive, that Salandre had been prejudiced by the destruction of evidence, he had suffered anxiety and concern, and he had been subject to restrictions on his liberty. The court concluded that Salandre's sixth amendment right to a speedy trial had been violated and dismissed the charges against him. The State appealed and the court of appeals reversed.

In deciding whether Salandre's right to a speedy trial had been violated, the court of appeals applied the four factor test of *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972): (1) length of delay, (2) reasons for the delay, (3) assertion of the right, and (4) prejudice to the defendant. The court of appeals assumed for the sake of analysis that the eleven-month delay between Salandre's arrest and the hearing on his motion to dismiss was presumptively prejudicial. We take this opportunity to note our disapproval of the court's assumption on this point, as such an assumption may in another case result in unnecessary constitutional analysis. However, for reasons explained below we conclude that the delay in this case was presumptively prejudicial and triggered inquiry into the other *Barker v. Wingo* factors. We agree with the result reached by the court of appeals in weighing the first three factors in favor of Salandre, but not heavily. We disagree with the court's conclusion that the fourth factor, prejudice to the defendant, weighed against Salandre, and we disagree that on balance Salandre's right to a speedy trial was not violated.

■ *Attachment of the speedy trial right.* The parties agree that Salandre's sixth amendment right to a speedy trial was triggered by his arrest. Nevertheless, we take this opportunity to review the test, first discussed in *Kilpatrick v. State,* 103 N.M. 52, 53, 702 P.2d 997, 998 (1985), for determining when the speedy trial right attaches.[1]

The sixth amendment directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right to a speedy trial is implicated when the putative defendant becomes an "accused." *United States v. MacDonald,* 456 U.S. 1, 6, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). The Supreme Court in *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), examined the interests at work behind the speedy trial guarantee and, in so doing, explained the conditions under which a person becomes an accused:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.... So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

*Id.* at 320, 92 S.Ct. at 463.

The Court went on to clarify that it would not "extend the reach of the amend-

---

**1.** Today we are filing an opinion in *Gonzales v. State,* 111 N.M. 363, 805 P.2d 630 (1991), *aff'g State v. Gonzales,* 110 N.M. 218, 794 P.2d 361 (Ct.App.1990), in which we analyze the fourteenth and fifth amendment due process rights applicable to preaccusation delay. The due process guarantees examined in *Gonzales* are to be distinguished from the sixth amendment speedy trial rights discussed in this opinion.

ment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation." *Id.* at 321, 92 S.Ct. at 463–64. The Court stated that indictment, or the actual restraints of arrest *and* holding for charges,[2] implicates the speedy trial guarantee. In determining whether restraints have been experienced by the putative defendant, our analysis cannot rely on formalistic procedural occurrences. *See United States v. Gouveia,* 467 U.S. 180, 197, 104 S.Ct. 2292, 2302, 81 L.Ed.2d 146 (1984) (Stevens, J., concurring in judgment) (when a person is deprived of liberty in order to aid the prosecution in its attempt to convict him, and when the deprivation is likely to have the intended effect, that person is an accused); *see also Work v. State,* 111 N.M. 145, 149, 803 P.2d 234, 238 (1990) (Ransom, J., specially concurring) (interests protected by speedy trial right include more than the person's liberty interest). In the use of the term "actual restraints," we believe the Court evinced an approach sensitive both to deprivations of liberty and other relevant factors including harm to employment, financial resources and association, subjection to public obloquy, and creation of anxiety, all as described by the Supreme Court in *Marion.*

Applying these principles to the instant case, we hold that Salandre became an accused upon arrest. Salandre was arrested and released on bond, the terms of which required personal court appearances and prohibited travel outside the state. Under those circumstances, Salandre suffered sufficient impairment of interests contemplated by the sixth amendment to require the state speedily to proceed to trial. *See United States v. Loud Hawk,* 474 U.S. 302, 311 n. 13, 106 S.Ct. 648, 654 n. 13, 88 L.Ed.2d 640 (1986) (arrest and release on bail may trigger speedy trial guaranty); *Kilpatrick v. State,* 103 N.M. 52, 53, 702 P.2d 997, 998 (1985) (period of time after arrest and release on surety bond, but prior to indictment, must be considered in evaluating speedy trial claim). Additionally, there is evidence of harm to employ-

ment, financial resources, and associations, as well as anxiety arising out of the arrest. While these factors are relevant, we later will describe their significance in another context.

■ *Relationship between delay and prejudice and the recognition of presumptive prejudice arising from undue delay.* In light of our opinion in *Zurla,* we requested the parties in the present case to brief the questions of whether the eleven-month delay was presumptively prejudicial, what factors should enter into the determination of a presumptively prejudicial period of time, and whether the other three *Barker v. Wingo* factors affect this determination. *Zurla* recognized that a determination of whether delay is presumptively prejudicial requires consideration of (at least) the length of time between arrest or indictment and prosecution, the complexity of the charges, and the nature of the evidence against the accused. 109 N.M. at 642–43, 789 P.2d at 590–91.

■ The State, while voicing continued disagreement with our opinion in *Zurla,* argues that if "presumptively prejudicial delay" is considered to create a presumption of prejudice, factors other than those recognized in *Zurla* may have to be considered because the "mere passage of time is a poor indicator of whether a defendant's rights have been prejudiced." The State draws support from the recent dissent by Judge Hartz in *State v. Tartaglia,* 109 N.M. 801, 808, 791 P.2d 76, 83 (Ct.App. 1990) (Hartz, J., dissenting) (*Tartaglia II*), in which he suggested:

[I]f "presumptive prejudice" meant "probable prejudice," then a court would not start to apply *Barker's* four-factor analysis until it had determined that the delay was sufficiently long that the defendant probably suffered substantial prejudice. Such a result would excessively limit the application of the right to a speedy trial. After all, a defendant may have actually suffered prejudice even though the existence of prejudice

---

**2.** *See, e.g.,* SCRA 1986, 6–203 (probable cause determination to be made within twenty-four hours when arrest is without warrant and the person arrested has not been released).

would not be a probable result of the delay in itself.

By too narrowly construing the meaning of the presumption recognized in *Zurla,* this argument in essence poses a false dilemma. As counsel for Salandre points out, protecting against prejudice to the defendant at trial is a primary focus of analysis under the due process clause. By contrast, the sixth amendment right to a speedy trial also protects against interference with a defendant's liberty, disruption of employment, curtailment of associations, subjection to obloquy, and creation of undue anxiety. *Kilpatrick v. State,* 103 N.M. 52, 53, 702 P.2d 997, 998 (1985). "Presumptively prejudicial delay" refers to prejudice to the fundamental right to a speedy trial, not to specific prejudice covered by the fourth element, much less simply to impairment of the defense at trial. Indeed, we observed in *Zurla,* 109 N.M. at 646, 789 P.2d at 594, once the defendant demonstrates existence of presumptively prejudicial delay, "the burden of persuasion rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated."

Moreover, *Barker v. Wingo* recognized that the speedy trial right is "generically different" from other constitutional rights because it protects societal interests in the prompt prosecution of criminal cases that "exist[ ] separate from, and at times in opposition to, the interests of the accused." 407 U.S. at 519, 92 S.Ct. at 2186. Indeed, when the state has delayed trial unnecessarily in neglect of its role as the representative of society's interests, *see id.* at 527, 92 S.Ct. at 2190, a defendant's speedy trial claim becomes, in effect, the vehicle by which society's interests may be vindicated. It is in this light that we understand the Supreme Court's acceptance of a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2192. If the only relevant consideration was whether delay had prejudiced the defendant at trial, it would be difficult to explain the prominence given in this balancing test to the factors of reason for the delay and assertion of the right.

While no exact correlation may exist between delay and prejudice to the defendant at trial, in many cases, if not in most, the passage of time will affect the probability that a defendant's constitutionally protected interests have suffered. *See Zurla,* 109 N.M. at 648, 789 P.2d at 596 (quoting *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193 (Brennan and White, JJ., concurring)) (most defendants will suffer some prejudice to constitutionally protected interests in a speedy trial case); *Work v. State,* 111 N.M. 145, 148, 803 P.2d 234, 237 (1990) (in some cases delay may be so lengthy that the presumption of prejudice becomes "well-nigh conclusive," citing *United States v. Avalos,* 541 F.2d 1100, 1116 (5th Cir.1976)). However, the law recognizes presumptions because of policy reasons as well as because of empirical probabilities. *See generally McCormick on Evidence* § 343 (E. Cleary 3d ed. 1984). Policy reasons that lie at the heart of the speedy trial guarantee also support shifting the burden of persuasion to the state when it has delayed unnecessarily. It is the state that bears the primary responsibility to bring cases to trial within a reasonable time. *Zurla,* 109 N.M. at 646, 789 P.2d at 594. When a defendant makes a preliminary showing that the state has failed in its responsibilities, we believe it appropriate to require the state to demonstrate affirmatively that, on balance, the interests protected by the right to a speedy trial have not been compromised. As discussed below, however, the preliminary question of whether the presumption exists should be distinguished from the question of its effective weight as applied to the remaining factors of the balancing test.

*Threshold showing of presumptively prejudicial delay is determined by consideration of length of delay and complexity of the case; eleven-month delay in the present case requires further inquiry.* In deciding what factors are relevant to the preliminary showing of presumptively prejudicial delay, we find persuasive Salandre's argument that inquiry at this stage of a speedy trial claim into the remaining three factors would tangle the courts needlessly

in consideration of the minutiae of a case prior to the invocation of the full balancing test. This would, in turn, seriously dilute the usefulness of the preliminary showing as a mechanism for screening out frivolous claims. A primary purpose of such a showing is "to provide the courts and the parties with a rudimentary warning of when speedy trial problems may arise. * * * [L]ength of the delay acts as a rough measure of whether further inquiry is warranted." *State v. Curtis,* 241 Mont. 288, 300, 787 P.2d 306, 313–314 (1990) (rejecting consideration of how much of the delay caused by the state and how much caused by defendant in determination of whether delay is presumptively prejudicial); *accord State v. Grissom,* 106 N.M. 555, 562, 746 P.2d 661, 668 (Ct.App.1987). While a global inquiry into the other three *Barker v. Wingo* factors undoubtedly would serve as a better initial indicator of those cases in which a speedy trial violation actually was present, we are satisfied that consideration of the length of the delay, complexity of the charges, and nature of the evidence adequately serves this screening function.

As a matter of public policy, we believe it useful to set broad guidelines for determination of whether delay should be considered presumptively prejudicial in particular types of cases. *Barker v. Wingo* recognized that, in a jurisdiction with a six-month rule such as New Mexico, a nine-month delay may be unacceptable under certain circumstances. 407 U.S. at 528, 92 S.Ct. at 2191; *see* SCRA 1986, 5–604 (six-month rule); *cf. State v. Tafoya,* 91 N.M. 121, 124, 570 P.2d 1148, 1151 (Ct.App.1977) (suggesting that nine-month delay in larceny case was presumptively prejudicial).

We are of the opinion that nine months marks the minimum length of time that may be considered presumptively prejudicial, even for a case such as this involving simple charges and readily-available evidence.[3]

Therefore, we find the eleven-month delay between the time Salandre was arrested and the hearing on his motion to dismiss of sufficient concern that the State should be required to justify continued prosecution of the charges against him.[4] This case involves simple drug and weapons charges, and the linchpin of the State's case was the testimony of the arresting officer, which was available from the day of Salandre's arrest. The State does not dispute that its investigation in this case was complete within eleven days of the arrest. We hold the eleven-month delay to be presumptively prejudicial.

*Presumptively prejudicial delay and shifting the burdens of persuasion and production.* In *Zurla* we recognized that, once a defendant has demonstrated presumptively prejudicial delay, the burden of persuasion shifts to the state to show, on balance, that defendant's speedy trial right was not violated. 109 N.M. at 646, 789 P.2d at 594. The State argues in the present case that the nature of the burden it must carry is unclear. We therefore take this opportunity to clarify the principles applicable to this and other speedy trial cases.

In *Work,* subsequent to our opinion in *Zurla,* a majority of this Court adopted the position that the state can discharge its burden of persuasion as to specific elements by showing good reasons for the

---

**3.** At the other end of the spectrum of cases, we are unaware of any New Mexico case that has marked the minimum length of time necessary to trigger the speedy trial analysis for complex cases. We note, however, that in *Grissom* the court of appeals held sixteen months presumptively prejudicial in a complex conspiracy and racketeering case. 106 N.M. at 561–62, 746 P.2d at 667–68. We believe that for complex cases a period of fifteen months after the defendant becomes an "accused" should provide adequate time for the state to marshall its resources and proceed to trial. Accordingly, we believe trial courts should treat delay of fifteen or more months in such cases as requiring further inquiry. Twelve months for cases of intermediate complexity would be appropriate.

**4.** The State argued before the court of appeals that the time between Salandre's speedy trial motion and the hearing should not be counted, as the delay during this time was attributable to his attorney's pretrial preparation. Under the rule announced today, however, we consider this factor under our analysis of reasons for the delay, not in determining the length of delay.

delay, failure by the defendant to timely assert his right or acquiescence in the delay, or an absence of actual prejudice to the defendant's constitutionally protected interests. *Work*, 111 N.M. at 148, 803 P.2d at 237. Conversely, it may be said, the presumption *guarantees* a dismissal of the charges only in face of the state's failure to advance either evidence or argument in support of its burden to show there has been no violation of the defendant's speedy trial right. In the face of neither evidence nor argument, courts must presume: (1) there is no good reason for the lengthy delay; (2) the defendant timely asserted his right, *cf. Barker v. Wingo*, 407 U.S. at 529, 92 S.Ct. at 2191 (while defendant has some responsibility to assert a speedy trial right, and assertion of right is entitled to great evidentiary weight, defendant cannot be said to have waived the right through silence); and (3) the delay worked prejudice against the defendant's constitutionally protected interests.

Either party may go forward with evidence relevant to the balancing test. The defendant may bear a burden of producing some evidence to corroborate claims of prejudice pursuant to the fourth prong of the test, but the effect of failure to produce such evidence depends on factors such as the actual length of delay and the argu-ments and evidence advanced by the state. Less weight must be given the presumption as applied to the fourth prong when supported by no evidence other than the length of delay itself (and the state may overcome the presumption with evidence to the contrary, just as the defendant may strengthen the presumption with corroborating evidence).[5]

As we stated in *Work*, "[i]f neither party comes forward with facts, the 'probability of prejudice' will remain just that—a probability; but it may have greater or lesser significance in the balancing process depending on the length of the delay and the weights assigned to the other factors." 111 N.M. at 148, 803 P.2d at 237 (citations omitted). When the state has delayed long past the time considered presumptively prejudicial, its burden to show on the record that defendant's right to a speedy trial was not violated becomes correspondingly heavier.[6] Conversely, a delay just long enough to trigger the balancing test will have a smaller practical effect on the overall balancing.

We stress, however, that we anticipate both parties will seek to develop the facts at the trial court level to corroborate or rebut specific claims of prejudice. Moreover, regardless of whether the state or the

---

5. While it may be feared that placing the burden of persuasion on the state as to the prejudice prong places the state in the unfair position of proving a negative, this is not the case. When the defendant has made specific allegations of prejudice, circumstantial evidence may be presented to demonstrate the improbability of the allegations. For example, as discussed below, the State in this case argued that, regarding Salandre's defense that the original traffic stop was pretextual in nature, records from the motorcycle dealership could have provided an adequate substitute for the motorcycle itself. Had the State introduced these records, they well may have demonstrated the truth of this contention and thus may have established that there was no impairment to Salandre's defense in this regard. Additionally, when specific allegations are made that do not constitute prejudice to the defendant's constitutionally protected interests, or when no specific allegations are advanced at all, any possibility of prejudice to be inferred from the existence of the delay itself well may fail to shift significantly the overall balance of the remaining factors. Moreover, in such cases the state still may present evidence to show, for example, that the defendant has displayed no undue anxiety, that the evidence likely to be relied upon by the defendant at trial has been memorialized, or that likely defense witnesses do not report any significant impairment of their memory, etc. In any event, except in extraordinary cases, we do not anticipate that "presumed prejudice" as applied to the fourth prong will be dispositive absent specific corroboration by the defendant. In this sense, the defendant in the majority of cases will, practically speaking, have a burden of producing evidence to corroborate the existence of such prejudice.

6. The reasons for the delay and the defendant's assertion of his right also may affect analysis of the prejudice prong of the analysis. For example, as recognized in *Zurla*, early and frequent assertions of the right are indicative of the probable extent to which the defendant's constitutionally protected interests have suffered because of the delay, even in the absence of independent corroborating evidence of such prejudice. 109 N.M. at 644, 789 P.2d at 592.

defendant prevails on a particular factor, "courts [still] must * * * engage in a difficult and sensitive balancing process" in making a final determination. *Zurla*, 109 N.M. at 642, 789 P.2d at 590 (quoting *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193). This balancing process should not be done mechanically, and a particularly strong showing on one factor by either party may be dispositive under the facts of a particular case. On appeal, "we now independently balance the factors considered by the trial court in deciding whether a speedy trial violation has taken place." *Id.* at 642, 789 P.2d at 590; *see also State v. Grissom*, 106 N.M. 555, 561, 746 P.2d 661, 667 (Ct.App.), *cert. denied*, 106 N.M. 439, 744 P.2d 912 (1987).

■ *Defendant did not suffer oppressive pretrial incarceration or undue anxiety and concern.* The district court found Salandre had been subjected to restraints on his liberty interests and had suffered anxiety and concern. We disagree with whether the same constituted "actual restraints." [7] As the State argued before the court of appeals, the parole restrictions placed on Salandre before his arrest on the charges at issue in this case were more severe than those placed on him as a result of the bond. He apparently lived under the restrictions created by the bond for only about one month following his release from incarceration on the parole violation. This does not amount to oppressive restraint.

Moreover, although *Zurla* held that the loss of the possibility of concurrent sentences may constitute an aspect of oppressive pretrial incarceration, 109 N.M. at 645, 789 P.2d at 593, in that case the defendant was incarcerated on the parole revocation for sixteen months while awaiting trial on the pending charges. Here, Salandre actively avoided facing a revocation hearing for several months, and was incarcerated for less than five months before being released. Only eight months passed from the date of his arrest to his release on the parole revocation. Since the record in this case establishes that Salandre's release occurred before the delay became inordinate, and since he would have been released earlier but for his attempts to avoid parole revocation, we conclude that he did not suffer loss of the possibility of concurrent sentencing because of lengthy delay in bringing the pending charges to trial. *See Grissom*, 106 N.M. at 563, 746 P.2d at 669 (when documentary evidence was destroyed before delay became inordinate, loss of evidence did not constitute prejudice); *cf. Zurla*, 109 N.M. at 648, 789 P.2d at 596 (when record on appeal failed to establish whether loss of testimony of defense witnesses was due to inordinate delay, State failed to rebut presumption of prejudice simply by pointing to the defendant's failure to establish such a connection).

While we agree with the trial court that Salandre suffered some anxiety and concern, we hold that the anxiety and concern suffered did not substantially tip the prejudice prong in Salandre's favor. Salandre testified that the pending charges hampered his business associations and disrupted his relationship with his fiancee. However, most of Salandre's claims of anxiety and concern grow out of his status as an ex-felon, and his precarious parole situation. Admittedly, these claims stem in some sense from the arrest and release but, because the record permits an equal inference that those claims arose from Salandre's parole concerns during the four months preceding revocation, we accord them lesser weight. Additionally, Salandre did not testify that his anxiety and concern extended for an unacceptably long period. We conclude that the State has carried its burden to show that Salandre suffered no undue anxiety and concern.

■ We pause here to express our disagreement with the language in *Grissom*, 106 N.M. at 564, 746 P.2d at 670, purportedly requiring a showing of greater anxiety and concern than that attending most criminal prosecutions. We believe that stan-

---

**7.** Although the court of appeals concluded that Salandre waived his argument regarding impairment of his liberty interests, our review of his brief reveals that he did raise this issue, albeit tangentially to his claim of anxiety and concern. We therefore consider both claims.

dard is unworkable. It raises the possibility of protracted and unnecessary expert testimony concerning the normal levels of anxiety and concern suffered by an accused. Moreover, that test requires nebulous judicial comparison of an accused's anxiety and concern in a particular case with the established norm. The operative question is whether the anxiety and concern, once proved, has continued for an unacceptably long period. It is for the court to determine whether the emotional trauma suffered by the accused is substantial and to incorporate that factor into the balancing calculus.

■ *State has failed to establish that defense was unimpaired.* The district court found Salandre "made a sufficient showing of prejudice * * * including the destruction of evidence necessary for the defense at trial and in pre-trial motions during the period of delay attributable to the State." At the hearing on his speedy trial motion, Salandre made two claims that his defense was impaired because of the destruction of the motorcycle and the leather pouch. As acknowledged by the State in its brief in chief before the court of appeals, "[t]he defense wanted to use the bike to determine whether it had defective equipment justifying Mr. Salandre's traffic stop, and whether the arresting officers could smell the drugs that were found in containers on the bike." Because we hold in defendant's favor on the first issue, we do not reach the second.

Here, unlike Salandre's claim regarding oppressive pretrial incarceration stemming from his parole violation, the evidence shows the existence of a nexus between the undue delay in the case and the prejudice claimed. As noted by Judge Chavez in his court of appeals dissent, despite Salandre's motion of February 19, 1988, to have the documents of title to the motorcycle released, the State failed to act until ordered to do so by the court on April 5. The motorcycle was destroyed the same day. The period of time during which the delay in this case became inordinate was the period during which the State refused to release these documents.

The State argued on appeal that the motorcycle was not necessary to the defense. The State points out that the motorcycle had been in the possession of the dealer until approximately fifteen minutes before Salandre's arrest, and contends that "[b]usiness records, or the testimony of Cycle West personnel could have established the condition of the bike at the time of the arrest." However, no evidence has been presented that those business records actually were available. Based on the evidence, we cannot say that the State has shown the nonexistence of prejudice stemming from the destruction of the motorcycle to be less likely than the existence of such prejudice. We therefore conclude the State has failed to carry its burden of persuasion on this factor.

*Conclusion.* This is a close case. The length of delay and reasons for delay do not suggest that this is a case in which the State has acted with intentional disregard of, or "indifference" to, defendant's right to a speedy trial. *Cf. Zurla,* 109 N.M. at 644, 789 P.2d at 592. Nevertheless, because the delay is long enough to be presumptively prejudicial and the State offers no excuse or justification for the delay, we must weigh these two factors in defendant's favor. Defendant's assertion of his right was timely and this also weighs somewhat in his favor. Because the State failed to carry its burden of persuasion that there was no impairment of the defense, we conclude the fourth prong of the analysis weighs slightly in Salandre's favor as well. Although the extent of prejudice is slight, and might not justify dismissal of the charges standing alone, on balance we must conclude a speedy trial violation has taken place. Accordingly, we reverse the court of appeals and remand to the district court for entry of an order dismissing the case.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.