# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Filing Date: June 25, 2009

**NO. 31,047**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**DEBRA VILLALOBOS,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sam B. Sanchez, District Judge**

Gary King, Attorney General
M. Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Petitioner

Trace L. Rabern
Santa Fe, NM

for Respondent

**DECISION**

**DANIELS, Justice.**

{1}    In this case, we review the district court's dismissal of misdemeanor DWI and felony child abuse charges on constitutional speedy trial grounds. The Court of Appeals upheld the dismissals in a memorandum opinion, relying in part on the "right for any reason" doctrine. We determine that the dismissal of the indictment by the district court was an abuse of discretion and that the "right for any reason" analysis of the Court of Appeals was both factually and legally unsupported. We therefore reverse the decisions of both courts and remand this matter to the district court with instructions to reinstate both charges. Because our reversal of the unpublished opinion of the Court of Appeals is based on clearly established New Mexico law, we see no reason for our issuance of a formal published opinion. We therefore are issuing this Decision under Rule 12-405(B) NMRA.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

{2}    Because the dates of the arguably relevant events are important in analyzing this case, those events will be addressed chronologically.

**January 24, 2006.** According to the arresting officer's affidavit of probable cause, shortly before noon on January 24, 2006, a New Mexico State Police officer

2

was flagged down by a motorist, who directed the officer's attention to a nearby car that was stuck in the dirt on a hilly shoulder and was spinning its tires in a cloud of dirt and smoke in a futile effort to get free. He approached the stuck car and was told by Defendant, the driver, that she had driven off the road to have her daughter, Defendant's front-seat passenger, take over driving, but that she had lost traction before she could turn over the wheel to her daughter. The officer observed that Defendant had alcohol on her breath and was slurring her speech, although Defendant denied having anything to drink that day. She failed all of the field sobriety tests the officer conducted at the scene. After the officer arrested her for DWI, she refused his request to submit to chemical testing. She was released from custody on her own recognizance about eight hours later.

**January 25, 2006.** The arresting officer filed in magistrate court a criminal complaint and supporting affidavit of probable cause charging Defendant with the misdemeanor offense of first offense aggravated DWI, the aggravating factor being her refusal to submit to testing under the Implied Consent Act, *see* NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2003), contrary to NMSA 1978, Section 66-8-102(D)(3) (2005, prior to amendments through 2008).

**January 31, 2006.** Defendant filed a waiver of arraignment in magistrate

3

court.

**February 15, 2006.** The magistrate court clerk mailed the parties copies of a filed notice that a pre-trial conference was scheduled for March 15, 2006.

**March 15, 2006.** The assigned prosecutor filed his formal entry of appearance, discovery disclosures, and request for settings of pre-trial hearings and trial on the merits. After entering his appearance, he noticed that the paperwork prepared by the arresting officer, while referring to the passenger as Defendant's daughter, did not indicate either her specific age or whether she was a minor or an adult. He therefore asked his investigator to look into the age of the daughter.

**March 14-22, 2006.** According to Defendant's testimony in the district court, she rejected the plea offer that she understood the prosecutor had held open to her between the dates of March 14 and March 22.

**March 23, 2006.** The prosecutor learned that Defendant's daughter was under eighteen and began researching whether Defendant should be charged with the felony of child abuse as a result of operating a motor vehicle under the influence with a minor in the car. *See* NMSA 1978, § 30-6-1(D)(1) (2005) ("Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be placed in a situation that may endanger the

child's life or health."); *see also State v. Castañeda*, 2001-NMCA-052, ¶ 22, 130 N.M. 679, 30 P.3d 368 (upholding child abuse conviction based on reckless endangerment of minor passengers by drunk driver).

**March 29, 2006.** The defense filed a notice of substitution of counsel.

**March 29, 2006.** The magistrate court clerk mailed the parties copies of a filed notice reflecting that a July 19, 2006, jury trial was scheduled on the DWI complaint.

**April 3, 2006.** Defense counsel filed in the magistrate court his "Entry of Appearance, Demand for Discovery, Speedy Trial and Preservation of Evidence."

**April 26, 2006.** The prosecutor requested that the case be scheduled before the grand jury for consideration of a possible felony indictment for child abuse and DWI.

**May 18, 2006.** The grand jury returned and filed in the district court a two-count indictment against Defendant, charging her with felony child abuse and misdemeanor aggravated DWI.

**May 19, 2006.** Defense counsel filed in the district court his "Entry of Appearance, Demand for Discovery, Speedy Trial and Preservation of Evidence."

**May 26, 2006.** The State filed in the magistrate court a notice of voluntary

5

dismissal without prejudice of the still-pending DWI criminal complaint.

**June 30, 2006.** Defense counsel filed in the district court Defendant's waiver of arraignment on the indictment.

**July 12, 2006.** The district court entered a scheduling order setting various dates and deadlines, including a meet-and-confer settlement discussion deadline of October 6, a pre-trial hearing on November 3, and a trial on November 27, 2006. The order also specified a six-month rule expiration date of December 30, 2006, after the November 27 trial date and exactly six months after the June 30 waiver of arraignment in the district court.

**November 3, 2006.** Defendant filed a motion to dismiss the indictment on constitutional speedy trial grounds, alleging that "the State has violated her right to a speedy trial as secured by the [Sixth] Amendment to the [United States] Constitution and Article [II], Section 14 of the New Mexico Constitution." The motion neither relied on nor mentioned in any way any alleged reliance on the six-month rules for either the district court or the magistrate court. The State did not file any formal written response to this constitutionally-grounded motion to dismiss.

**November 20, 2006.** The parties participated in an evidentiary hearing on Defendant's motion to dismiss, at which Defendant was the only witness. As with

the written motion to dismiss, the hearing focused on the constitutional speedy trial considerations of length of pretrial delay, reasons for the delay, the extent of Defendant's speedy trial demands, and any prejudice to Defendant. At the conclusion of the hearing, the district judge announced his oral ruling:

> In this case, Miss Villalobos was arrested on January 24, 2006. At that point in time all the essential facts, I guess I could put it, had gelled and were there. After January 24, 2006, there were no additional facts that came into this case. The court has to look at that. The court has to look at whether or not there are any new facts or circumstances that would give rise to the refiling or a new filing of a new criminal complaint or grand jury indictment. In this case there were none. The State, whether through the officer or the district attorney's office, had everything it needed to file the charges that they needed to file. The fact that they waited until May and now it is November 20, 2006, the time between January 24 and November 20, 2006, being ten months, is presumptively prejudicial. This court is going to dismiss this grand jury indictment.

{3} **November 28, 2006.** The State filed a written motion to reconsider, detailing the factual history that not been considered by the district court and citing precedents that were inconsistent with the district court's announced dismissal.

{4} **December 5, 2006.** The district court filed a written order of dismissal which stated in its entirety:

> THIS MATTER, came before the Court on defendant's motion to dismiss for violation of her right to a speedy trial, the Court finding [ten] months to be presumptively prejudicial and the Court having heard from the parties, and taken evidence,

FINDS the motion well taken, and

ORDERS the case dismissed with prejudice.

{5} In a memorandum opinion, the Court of Appeals affirmed the dismissal of the DWI charge based on the constitutional speedy trial analysis of the district court that the charges had been pending for a combined ten months in both courts and that such a delay was presumptively prejudicial. *State v. Villalobos*, No. 27,262, slip op. at 6 (N.M. Ct. App. Feb. 27, 2008). With respect to the felony child abuse charge, which had been pending for just six months by the time it was dismissed, the Court acknowledged that it could not lawfully uphold the dismissal on the constitutional speedy trial ground relied on by the district court. *Id.* at 6-7. However, the Court held that it would apply the "right for any reason" doctrine and affirm the dismissal of the felony child abuse charge on one or more theories never argued by the parties nor relied on by the district court. *Id.* at 7.

{6} Although it is unclear exactly which specific theory the Court of Appeals ultimately relied on in upholding dismissal of the child abuse charge, we have discerned several conceptually separate theories which were touched upon in the memorandum opinion. All of those theories shared the common thread of finding inferences of what the Court referred to as "bad" reasons for the prosecutor's

decision to seek the district court indictment. *Id.*

{7} We granted the State's petition for writ of certiorari to review the decision of the Court of Appeals.

**II.  DISCUSSION**

**A.  Standard of review.**

{8} The right to a speedy trial, protected under the Sixth and Fourteenth Amendments of the United States Constitution and Article II, Section 14 of our State Constitution, attaches once a defendant becomes an accused, whether by the issuance of an indictment, or information, or arrest and holding to answer. *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061. In ruling on a motion to dismiss for violation of the right, the district court must apply the balancing test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972), which requires consideration of (1) the length of pretrial delay, (2) the reasons for the delay, (3) the defendant's assertion of speedy trial rights, and (4) any resulting prejudice to the defendant. *Urban*, 2004-NMSC-007, ¶ 11. In doing so, the district court must make both factual determinations and legal conclusions. *State v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254. On appellate review, we give deference to the court's factual findings, and we review de novo the legal determination involved in

9

weighing and balancing the four *Barker* factors. *Urban*, 2004-NMSC-007, ¶ 11.

**B.     There was no constitutional speedy trial violation with respect to the felony child abuse charge.**

{9}     We agree with the Court of Appeals to the extent that it held there was no factual or legal basis for the district court's dismissal of the felony child abuse charges on speedy trial grounds. *See Villalobos*, No. 27,262, slip op. at 5-6 (holding that "there can be no speedy trial violation with respect to the child abuse" charge because the charge had not been pending long enough to justify any presumption of prejudicial delay).

{10}     In making a speedy trial claim, a defendant must make a threshold showing that the length of delay is presumptively prejudicial, thereby triggering an inquiry into the *Barker* factors. *Urban*, 2004-NMSC-007, ¶ 11.

{11}     At the time of the dismissal in this case, our precedents had set a minimum period of nine months after the lodging of the charge that a speedy trial inquiry is normally required. *See Salandre v. State*, 111 N.M. 422, 428, 806 P.2d 562, 568 (1991). Because the child abuse charge was first asserted on May 18, 2006, by the return of the indictment, the six months between that date and the district court's dismissal cannot serve as the basis for the district court's conclusion of presumptive prejudice. *See Urban*, 2004-NMSC-007, ¶ 12 (holding that speedy trial computation

begins with indictment date). The Court of Appeals was therefore correct in concluding there was no speedy trial violation with respect to the felony child abuse charge.

## C. The Court of Appeals erroneously applied the "right for any reason" doctrine in affirming the child abuse dismissal.

{12} After acknowledging that the district court's dismissal of the child abuse charge on speedy trial grounds was legally unsupportable, the Court of Appeals determined that it should apply the "right for any reason" doctrine to Defendant's motion to dismiss, never addressed in any way in the district court, and never relied on by the district court in its dismissal order. *Villalobos*, No. 27,262, slip op. at 6-7.

{13} The "right for any reason" doctrine is an exception to the general principle that an appellate court will not consider on appeal any issues that were not preserved in the trial court and that do not involve "issues of general public interest, or matters involving fundamental error or fundamental rights." *State v. Foster*, 1999-NMSC-007, ¶ 47, 126 N.M. 646, 974 P.2d 140. Our cases have emphasized the limited nature of those categories, and we have repeatedly cautioned in a long line of decisions spanning almost a century that those three exceptions "should not be used to decide new or difficult questions, especially when the factual basis is murky or incomplete." *N.M. Dep't of Human Servs. v. Tapia*, 97 N.M. 632, 634, 642 P.2d

11

1091, 1093 (1982).

{14}	One limited exception that we have recognized as appropriate for consideration of unpreserved issues is the "right for any reason" doctrine, which can be employed to uphold a correct lower court ruling on grounds other than those specifically articulated by the lower court. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828. There are important limitations to the use of this approach. One is that it will only be employed if doing so "is not unfair to the appellant." *Id.* A corollary limitation, often made necessary by the fairness requirement, is that "[a]ppellate courts usually apply the right for any reason basis of affirmance to strictly legal questions." *State v. Wilson*, 1998-NMCA-084, ¶ 17, 125 N.M. 390, 962 P.2d 636. It is axiomatic that a party who has had no fair notice of the eventual dispositive significance of particular facts would not have been aware of the need to call witnesses and shape the presentation of evidence necessary to make a proper record for judicial resolution of the issue.

{15}	In this case, the only factual issues that the prosecutor would have been aware he needed to litigate in the district court were the four *Barker* constitutional speedy trial factors. Neither the *Barker* factors nor anything else alleged in the motion to dismiss involved any necessity for addressing whether the prosecutor had a "bad

reason" for filing the child abuse charge, or attempting to determine whether the filing was a retaliatory prosecution, or challenging the Defendant's inaccurate version of the facts surrounding her arrest, or litigating the weight of the evidence supporting the child abuse charge. All of those considerations later turned out to be underpinnings for the "right for any reason" affirmance by the Court of Appeals, after it determined that the district court erroneously dismissed the child abuse felony on speedy trial grounds. We address briefly the several unpreserved and unlitigated theories mentioned by the Court of Appeals in support of its affirmance.

## 1.    *The "Bad Reason" analysis.*

{16}    Our "bad reason" analysis was first formulated in *State ex rel. Delgado v. Stanley*, 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972), to address the situation in which a prosecutor dismisses a pending charge and then refiles the same charge for the purposes of "delay or to circumvent the operation of [the six-month rule]." It has been employed in various dismissal and refiling situations to provide relief to a defendant when a prosecutor has "engaged in game-playing with the rules, and has misused his discretionary powers to achieve a barred result." *State v. Ericksen*, 94 N.M. 128, 131, 607 P.2d 666, 669 (Ct. App. 1980). There are two important reasons why the Court of Appeals erred in engaging in the "bad reason" analysis to justify

dismissal of the child abuse charge. The first is that the State had no fair notice of the issue and of its need to exercise its rights under the law to litigate its reasons for its prosecutorial decision to present the charge to the grand jury, and the second is that the "bad reason" doctrine is simply inapplicable to this kind of charging decision.

{17} With regard to the lack of notice and opportunity for the State to litigate, our courts have made clear the procedure to be followed when a "bad reason" issue is raised with respect to a prosecutor's relevant actions. Once the defense raises the issue, "the case should be dismissed only when the prosecutor cannot demonstrate that the reason for dismissing was not a bad one." *State v. Bolton*, 1997-NMCA-007, ¶ 11, 122 N.M. 831, 932 P.2d 1075. In this case, the defense never raised the issue, and the State had no fair opportunity to present the facts that would support the good faith reasons for seeking the child abuse indictment. The application of the "right for any reason" doctrine to analyze the prosecutor's suspected motives as a basis for upholding dismissal of the indictment was improper on that ground alone.

{18} Even if the State had been given fair notice that it would be necessary to litigate the good faith of the prosecution in filing the felony charge in district court,

14

this Court has made it clear for at least a decade that the "bad reason" analysis is generally to be applied to a prosecutor's action, such as dismissal and refiling of the same charge, that is taken for the purpose of evading the consequences of a court rule or procedure. *State v. Brule*, 1999-NMSC-026, ¶ 16, 127 N.M. 368, 981 P.2d 782. In *Brule*, a case strikingly similar to the procedural context of this case, a police officer had filed misdemeanor charges of assault and battery in a domestic violence case. *Id.* ¶ 2. Instead of pursuing those lower court charges, a prosecutor decided to seek a felony indictment in district court, adding charges of false imprisonment and witness bribery to the battery charge. *Id.* Observing that he thought continued prosecution was "pointless" and "contrary to basic common sense," the district judge granted a defense motion to dismiss. *Id.* ¶¶ 11, 14. The judge concluded that the prosecutor must have had improper motives in seeking the additional felony charges in district court, because he had done so after conflicts with the complainant about her desire to drop the charges. *Id.* ¶ 2. In a divided opinion, the Court of Appeals affirmed the dismissal, relying heavily on the *Stanley-Bolton* line of cases "for its conclusion that once a defendant raises the issue of 'prosecutorial bad motives,' the State 'bears the burden of demonstrating the bona fides of its procedure.'" *Id.* ¶ 15 (citation omitted). The Court of Appeals held that

15

the State had failed to meet its burden of showing that the prosecution was not "motivated by retaliation against both an uncooperative Defendant and an uncooperative victim." *State v. Brule*, 1997-NMCA-073, ¶ 18, 123 N.M. 611, 943 P.2d 1064. In language that is as instructive as it was ten years ago, this Court rejected the attempt to engraft the *Stanley-Bolton* "bad reason" doctrine onto what is in essence a claim that a prosecutor with bad motives sought a higher charge after an initial filing of a lesser charge:

> Both *Bolton* and *Stanley* involved allegedly improper prosecutorial attempts to evade the six-month rule. The six-month rule puts a near-absolute time limit on prosecutorial discretion in pursuing a case, lifted only for a maximum of three months by the trial judge or upon an express extension from this Court. *See* Rule 5-604(B)-(F) NMRA 1999. There is no similarly rigid limitation on a prosecutor's initial discretion regarding whether or not to bring charges against a criminal defendant. To be sure, a prosecutor may not retaliate against a defendant for exercising protected rights. As is evident from the procedural history of this case, however, determination of whether a prosecutor has acted vindictively is a much less sure matter than ascertaining whether six months have elapsed. For this reason, the threshold level for requiring an explanation from the prosecutor is appropriately higher in this type of case; that is, only upon a showing of actual vindictiveness or a reasonable likelihood of vindictiveness. *See* [*United States v.*] *Contreras*, 108 F.3d [1255,] 1262 [10th Cir. 1997]. We decline to extend *Bolton* and *Stanley* beyond their facts. This case does not involve the six-month rule, and therefore those cases are not applicable.

*Brule*, 1999-NMSC-026, ¶ 16.

16

**{19}** *Brule* is both applicable and dispositive here. This case did not involve, and under the facts could not have involved, any issue of evasion of a court rule with respect to the child abuse indictment. The child abuse charge had not previously been filed in any court prior to the return of the indictment, and there was never any issue of compliance with a court rule regarding the charge. The Court of Appeals therefore improperly used the "bad reason" analysis to affirm the dismissal of the child abuse indictment.

## 2. *The Vindictive Prosecution Theory.*

**{20}** To the extent that the Court of Appeals grounded its affirmance on a vindictive prosecution theory based on the filing of the child abuse charges after Defendant's rejection of a misdemeanor DWI plea bargain, that theory was factually and legally unsupportable on this record.

**{21}** To begin with, the inappropriateness of an appellate court's using the "right for any reason" doctrine to uphold an erroneous speedy trial dismissal on an unlitigated vindictive prosecution theory is even more aggravated here than in a "bad reason" rule-circumvention theory, given the heightened evidentiary standards for a vindictive prosecution dismissal under *Brule*. A prosecutor is entitled to provide "a reasonable explanation to rebut" any implications of vindictiveness. *State v.*

17

*Duncan*, 117 N.M. 407, 411, 872 P.2d 380, 384 (Ct. App. 1994), *abrogated on other grounds by Brule*, 1999-NMSC-026, ¶¶ 3-6.

{22}     Moreover, neither the facts reflected in the speedy trial hearing record nor those in the entire record proper reflect any factual support whatsoever for a vindictive prosecution dismissal.  The fact that the prosecutor reviewed the file and requested a grand jury hearing on the felony charge after the DWI was first filed in magistrate court does not, without more, justify interference with the considerable discretion a prosecutor has in bringing a charge.  *See State v. Heinsen*, 2005-NMSC-035, ¶ 25, 138 N.M. 441, 121 P.3d 1040 ("New Mexico has long recognized that the State has wide discretion to dismiss a criminal case in magistrate court by filing a nolle prosequi and reinstating charges in district court.").  "[T]he District Attorney's decision to pursue felony charges in district court after filing a nolle prosequi on the initial misdemeanor charges does not suggest a likelihood of vindictiveness." *Brule*, 1999-NMSC-026, ¶ 11.

{23}     The mere fact that the prosecutor sought the felony child abuse indictment shortly after Defendant's failure to accept a plea bargain does not establish grounds for dismissal.  Our law has rejected the use of such a classical example of the *post hoc ergo propter hoc* fallacy in reasoning.  This Court has stressed that prosecutors

18

are not obligated "to press the severest charges possible at the outset" of a prosecution. *State v. Stevens*, 96 N.M. 627, 630, 633 P.2d 1225, 1228 (1981); *see id.* at 631, 633 P.2d at 1229 (rejecting a "pretrial presumption of vindictiveness" for a prosecutor's increase of charges after exercise of a right by a defendant). Therefore, the mere fact of an increase in charges after a rejected plea bargain was insufficient to trigger the requirement of a response by the prosecutor.

{24}    Even if there had been any initial showing of grounds for a vindictive prosecution challenge, the State was entitled to have notice of the claim and an opportunity to be heard on the issue. *See Duncan*, 117 N.M. at 411, 872 P.2d at 384. The State's motion for rehearing thoroughly detailed the facts the State could have produced with adequate notice, establishing the prosecutor's good faith reasons for seeking the child abuse indictment, as well as the fully reasonable time sequence. In a timely sequence of events after being assigned to the case, the prosecutor reviewed the files and noted that none of the police reports or court documents reflected the age of Defendant's daughter, who was a passenger in the car Defendant was driving when she was arrested for DWI. The prosecutor promptly asked his investigator to determine the age of Defendant's daughter, so that he could consider filing a child abuse felony charge under New Mexico case law. *See Castañeda*,

19

2001-NMCA-052, ¶¶ 21-22 (holding that driving while drunk with a child in the car can constitute reckless child endangerment under the felony child abuse statute).

{25}     The Court of Appeals relied on its assessment of the weakness of the evidentiary support for the child abuse charge in determining that the prosecutor must have been acting out of improper motives, but this Court has specifically rejected such an approach: "We hold that the merits of a prosecution may not be weighed in determining whether prosecutorial vindictiveness exists." *Brule*, 1999-NMSC-026, ¶ 14. We now address the insufficient evidence theory, to address whether it has any merit apart from the inapplicable prosecutorial vindictiveness theory.

**3.     *The Insufficient Evidence Theory.***

{26}     The Court of Appeals concluded that the prosecutor had a "bad reason" for seeking the child abuse indictment because the charge was "largely unsupported." *Villalobos*, No. 27,262, slip op. at 11. The Court expressed its doubts "whether the facts in this case would be sufficient to support a felony conviction for child abuse." *Id.* at 10.

{27}     It is important to remember that not only did the prosecutor exercise his

20

prosecutorial discretion in seeking the child abuse charge, a lawfully constituted grand jury found probable cause to support the indictment. "A district court should not dismiss a case in which a grand jury has found probable cause simply because the district court views continued prosecution as 'pointless' or 'contrary to basic common sense,' as was done here." *Brule*, 1999-NMSC-026, ¶ 14; *see also State v. Chance*, 29 N.M. 34, 39-40, 221 P. 183, 184-85 (1923) (holding that an indictment cannot be dismissed solely on the ground it was not supported by sufficient evidence).

{28}     Defendant has never made an argument that the indictment did not adequately charge the crime of child abuse on its face, nor has there been any *Foulenfont*-type challenge to the legal sufficiency of the undisputed facts to constitute a crime. *See State v. Foulenfont*, 119 N.M. 788, 790, 895 P.2d 1329, 1331 (Ct. App. 1995) (holding that a court may address pretrial a purely legal issue of the adequacy of the undisputed facts to satisfy the statutory definition of a crime). Even the Court of Appeals acknowledged the New Mexico "authority for the principle that driving while intoxicated with a minor in the vehicle can support a child abuse charge." *Villalobos*, No. 27,262, slip op. at 9.

{29}     The Court of Appeals attempted to distinguish *Castañeda*, based on what it

21

misperceived to be the facts in this case. *See Villalobos*, No. 27,262, slip op. at 9 ("The distinctions between [*Castañeda*] and this case are great."). No facts, however, from the grand jury transcript, the police report, the arresting officer's affidavit of probable cause from the magistrate court file, or any other source besides Defendant's testimony were ever presented at the speedy trial motion hearing. The Court of Appeals apparently relied solely on Defendant's version of the facts underlying the two charges in applying its "right for any reason" analysis, concluding (1) that the child abuse charge was based on no more than Defendant's getting into an argument with her daughter, and (2) that the DWI charge was based solely on a refusal to take a chemical test. *See id.* at 10 ("In this case, by contrast, Defendant was in a car arguing with her seventeen-year-old daughter, and the DWI charge was based on a refusal to take a chemical test.").

{30}     Had the hearing below been directed to the sufficiency of the evidence, a glance at the probable cause affidavit filed of record in the magistrate court immediately after Defendant's arrest would have demonstrated a totally different scenario. The child abuse charge was not based on her arguing with her daughter. It was based on driving drunk with someone under the age of majority in the car. And the DWI charge was not based only on a refusal to take the Implied Consent

Act tests—that was simply the factor that made the DWI an aggravated one. The basic DWI charge was based on much more, apart from Defendant's observed difficulty in driving the car properly. According to the filed probable cause affidavit: (1) she was not only technically in control of the vehicle, she was actively driving it, with the motor running, her hands on the wheel, and her foot working the throttle; (2) her breath smelled of alcohol; (3) her speech was slurred; (4) she denied having anything to drink that whole day; (5) she failed the Nine Step Walk and Turn test in six different respects; (6) she failed the One Legged Stand test in five different respects; and (7) she exhibited every one of the six relevant clues on the Horizontal Gaze Nystagmus test. The passenger of the car met the technical definition of a potential child victim in the applicable child abuse statute. *See* § 30-6-1(A)(1) ("'[C]hild' means a person who is less than eighteen years of age."). Without a proper resolution of the factual disputes, this case cannot be distinguished from *Castañeda* as a matter of law. Even if one thinks that converting a garden-variety misdemeanor DWI case into a felony child abuse prosecution because of the presence of a seventeen-year-old in the car is "contrary to basic common sense," the exercise of common sense in legislatively-authorized charging decisions is entrusted to the discretionary judgment of the prosecutor. *Brule*, 1999-NMSC-026, ¶ 14.

23

{31} After reviewing all grounds articulated in any fashion by the Court of Appeals in support of its decision, we conclude that it had no factual or legal basis for affirming the district court's dismissal of the child abuse count of the indictment.

**D.     There was no constitutional speedy trial violation with respect to the DWI count of the indictment.**

{32} The DWI count of the indictment cannot be viewed in isolation from the facts surrounding the procurement of the lawful indictment or from the child abuse count in the indictment. Even Defendant concedes in her brief before this Court that "[i]f adding the [child abuse] charge was for a proper reason, then the whole case, including the DWI, would likely survive a speedy trial analysis."

{33} Once the prosecutor lawfully exercised his discretion to seek a grand jury indictment on the felony child abuse charge, it was not only reasonable, but mandatory, for him to include in the indictment both the DWI count and the child abuse count that was based on the very same facts as the DWI. To avoid piecemeal prosecutions, New Mexico law requires prosecutors to charge together all crimes that arise out of the same factual circumstances. *See Gallegos*, 2007-NMSC-007, ¶ 10 (emphasizing that Rule 5-203(A) NMRA is not a discretionary or permissive rule; it demands that the State join crimes arising from a defendant's conduct or series of acts). The clear language of Rule 5-203(A) is mandatory in requiring

24

joinder where the offenses are based on the same underlying conduct:

> A.    **Joinder of offenses.**  Two or more offenses shall be joined in one complaint, indictment or information with each offense stated in a separate count, if the offenses, whether felonies or misdemeanors or both:
>
>> (1)    are of the same or similar character, even if not part of a single scheme or plan; or
>>
>> (2)    are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan.

{34}    The magistrate court had no jurisdiction to try the child abuse felony, and the district court was the only court with jurisdiction to try both charges.  Once the prosecutor lawfully exercised his prosecutorial discretion to pursue both charges, he had no choice but to join the DWI charge in the indictment and dismiss the magistrate court DWI complaint.  The indictment, which had been pending only six months at the time of the speedy trial dismissal, was not subject to dismissal for a presumptively prejudicial delay.  *See Salandre*, 111 N.M. at 428, 806 P.2d at 568.  The Court of Appeals therefore erred in upholding the district court's speedy trial dismissal of the DWI count.

**III.  CONCLUSION**

{35}    We reverse the decision of the Court of Appeals and remand to the district

court with instructions to vacate its order of dismissal and to proceed in accordance with this Decision.

{36}    **IT IS SO ORDERED.**


_____
                              **CHARLES W. DANIELS, Justice**

**WE CONCUR:**


_____
**EDWARD L. CHÁVEZ, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**

26