1999-NMSC-026

981 P.2d 782

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Paul Adrian BRULE, Defendant–Respondent.**

No. 24,480.

Supreme Court of New Mexico.

March 31, 1999.

Rehearing Denied May 27, 1999.

 

Hon. Patricia A. Madrid, Attorney General, Steven S. Suttle, Assistant Attorney General, Santa Fe, for Petitioner.

Jacquelyn Robins, Albuquerque, for Respondent.

*OPINION*

FRANCHINI, J.

{1}  The State appeals the dismissal of assault and battery charges against Paul Adrian Brule.  The district court dismissed the charges based on alleged prosecutorial vindictiveness, and a divided Court of Appeals affirmed.  We now reverse the Court of Appeals and the district court and remand for further proceedings consistent with this opinion.

*FACTS AND PROCEDURAL POSTURE*

{2}  We adopt the Court of Appeals' thorough recitation of the facts and procedural history underlying this case.  *See State v. Brule,* 1997–NMCA–073, ¶¶ 3–8, 123 N.M. 611, 943 P.2d 1064.  For the benefit of the reader, we note here simply that (1) a police officer filed misdemeanor assault and battery charges against Brule after responding to an alleged incident of domestic violence, and (2) the District Attorney did not pursue those charges, obtaining instead a grand jury indictment against Brule for felonious false imprisonment, bribery of a witness, and battery.  *Id.* ¶¶ 3–4.  We also reproduce here Paragraph 13 of the Court of Appeals' majority opinion, detailing other evidence that the district court relied upon in support of its conclusion that the District Attorney acted vindictively against Brule:

> Defendant raised the issue of prosecutorial vindictiveness by filing a motion to dismiss.  At the motion hearing, Defendant presented testimony from the alleged victim and from mental health professionals.  This testimony addressed, among other things, the tension in the relationship between Defendant and the alleged victim at the time, the uniqueness of the incident, alleged exaggeration of the event to the police, the fact that the marital relationship had since ended, the fact that the victim did not want the prosecution to continue, the fact that continued prosecution would be detrimental to this family, and the prosecutor's deceptive treatment of the alleged victim.

In the next paragraph of its opinion, the majority concluded, "Considering the evidence presented and the standard of review,

we hold that Defendant established through his witnesses a prima facie case of actual vindictiveness." *Id.* ¶ 14. Applying a new, *de novo* standard of review, we reach a different conclusion.

## STANDARD OF REVIEW

{3} The Court of Appeals applied an abuse of discretion standard of review, citing *State v. Duncan,* 117 N.M. 407, 411, 872 P.2d 380, 384 (Ct.App.1994), which in turn relied on *State v. Coates,* 103 N.M. 353, 358, 707 P.2d 1163, 1168 (1985). In *Coates,* this Court apparently viewed prosecutorial vindictiveness as simply another variety of prosecutorial misconduct. *See* 103 N.M. at 358, 707 P.2d at 1168. Prosecutorial misconduct has long been analyzed on appeal in New Mexico under an abuse of discretion standard. *See, e.g., Chacon v. Territory,* 7 N.M. 241, 247, 34 P. 448, 449 (1893) (upholding district court's refusal to strike remarks of a "zealous assistant prosecutor," noting, "[t]he trial court enjoys peculiar facilities for observing the propriety or impropriety of forensic arguments, and its discretion, when invoked, should rarely be interfered with, in the absence of obvious or probable injury"). Since *Coates,* the standard of review in prosecutorial vindictiveness cases has suffered considerable fragmentation across, and even within, jurisdictions. *Compare, e.g., State v. Brun,* 190 Ariz. 505, 950 P.2d 164, 165 (Ct.App. 1997) (relying on *United States v. Gallegos–Curiel,* 681 F.2d 1164, 1171 (9th Cir.1982) as authority for abuse of discretion standard without discussing conflicting cases in the 9th Circuit), *with United States v. Noushfar,* 78 F.3d 1442, 1446 (9th Cir.1996) (remarking that the "proper standard of review for vindictive prosecution is unsettled," different panels in that Circuit having " 'variously applied abuse of discretion, clearly erroneous, and *de novo* standards' ") (quoting *United States v. Montoya,* 45 F.3d 1286, 1291 (9th Cir.), *cert. denied,* 516 U.S. 814, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995)). *See United States v. Spears,* 159 F.3d 1081, 1086 (7th Cir.1998) (applying *de novo* review to vindictive prosecution). *But see United States v. Perez,* 79 F.3d 79, 81 (7th Cir.1996) (noting confusion in the Circuits but stating that "this circuit has come down firmly on the side of applying the clearly-erroneous standard to such questions"). *See also United States v. Raymer,* 941 F.2d 1031, 1039 n. 4 (10th Cir.1991) (observing that the First and Ninth Circuits have applied the clearly erroneous standard to the issue of vindictive prosecution as a mixed question of law and fact, but electing to apply a *de novo* standard in that case). After careful consideration, we are persuaded that appeals involving prosecutorial vindictiveness generally warrant a higher standard of review than was applied in *Coates,* for two reasons.

{4} First, unlike improper argument or other similar forms of prosecutorial misconduct, prosecutorial vindictiveness usually does not reveal itself openly in a courtroom to a trial judge's eyes and ears. Rather, if it exists, it lays coiled and hidden inside the prosecutor's skull. As such, it is notoriously difficult to prove and can usually only be inferred, as argued in this case, from charging decisions or other prosecutorial conduct outside the courtroom. *See North Carolina v. Pearce,* 395 U.S. 711, 725 n. 20, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). A reviewing court is in as good a position to evaluate such conduct as the trial court.

{5} Second, and more importantly, while all forms of prosecutorial misconduct may impinge to some degree on a defendant's right to due process, prosecutorial vindictiveness constitutes a particularly severe, prejudicial, and repugnant due process violation. Though we leave it to the trial courts to make an initial determination on whether such a violation has occurred, we think the importance of the interest at stake and the gravity of the harm alleged make it appropriate for us to retain at the appellate level close supervisory watch over prosecutors for vindictiveness. *Cf. State v. Attaway,* 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) (noting that "[i]t is the duty of appellate courts to shape the parameters of police conduct" and that "we can discharge that duty only through meaningful review of lower court determinations"). Settling upon a *de novo* standard of review in *Attaway,* this Court stated, "When, as here, 'the relevant legal principle can be given meaning only through its application to the particular circumstances

of a case,' an appellate court is 'reluctant to give the trier of fact's conclusions presumptive force and, in so doing, strip … [itself] of its primary function as an expositor of law.' " *Id.* (quoting *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). *See also State v. Juarez,* 120 N.M. 499, 502, 903 P.2d 241, 244 (1995) (citing *Attaway* for the proposition that "a de novo standard of review is appropriate for threshold constitutional questions, such as the voluntariness of confessions and the validity of search warrants"). We think the same standard is appropriate here.

{6} For the foregoing reasons, we hold that the issue of prosecutorial vindictiveness is normally subject to *de novo* review on appeal. However, we emphasize that even under the *de novo* standard, the district court plays an important role in ferreting out evil prosecutorial motives because "vindictive prosecution claims often turn on the facts of the case." *United States v. Contreras,* 108 F.3d 1255, 1262 (10th Cir.1997). Hence, we affirm the Court of Appeals' application of the deferential substantial evidence rule to the factual findings underpinning the district court's prosecutorial vindictiveness determination. *See Brule,* 1997–NMCA–073, ¶ 9, 123 N.M. 611, 943 P.2d 1064. Indeed, in the rare cases where direct evidence of prosecutorial vindictiveness exists, a district court's assessment of that evidence will be determinative, absent clear error. *Cf. Raymer,* 941 F.2d at 1039 n. 4. In most cases, however, as in this one, the evidence is indirect and therefore presents a mixed question of law and fact properly assessed in an independent manner by an appellate court, as we do here. *See State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (recognizing that when a policy decision involves a balancing of legitimate law enforcement interests against a defendant's rights, "the trial court is in no better position … than an appellate court"). In every case, of course, "our review of the legal principles which guide the district court is *de novo.*" *Raymer,* 941 F.2d at 1039.

*DISCUSSION*

{7} The polestar of legal principles here is that a vindictive prosecution

violates a defendant's right to due process. *See United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *see also State v. Lujan,* 103 N.M. 667, 673, 712 P.2d 13, 19 (Ct.App.1985) ("Prosecutorial vindictiveness involves [a] defendant's fundamental right to due process of law."). Due process requires that a defendant be free to exercise his or her procedural, statutory, or constitutional rights without fear of prosecutorial retaliation. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Hence, "due process also requires that a defendant be freed of *apprehension* of such a retaliatory motivation" on the part of the prosecutor. *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072 (emphasis added).

*Federal and State Due Process Protections*

{8} Both the federal and state constitutions guarantee the right to due process. *See* U.S. Const. amend. XIV, § 1; N.M. Const. art. II, § 18. Because Brule did not preserve a state constitutional claim, we limit our discussion herein to the protections of the Fourteenth Amendment. *See State v. Gomez,* 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (specifying preservation requirements).

*Presumptions in Pre–Trial Vindictive Prosecution Claims*

{9} In *State v. Stevens,* 96 N.M. 627, 630, 633 P.2d 1225, 1228 (1981), interpreting the federal Due Process Clause, this Court declined to adopt a *per se* presumption of vindictiveness at the pre-trial stage whenever a prosecutor acts in a way that arguably "chills" the exercise of a legal right. Instead, the *Stevens* court deemed it better to allow a defendant to "present evidence of vindictiveness and request relief from the court" on a case-by-case basis. *Id.* at 631, 633 P.2d at 1229. We reaffirm *Stevens* today. *See United States v. Stokes,* 124 F.3d 39, 45 (1st Cir.1997) ("[C]ourts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings .") (citing *Goodwin,* 457 U.S. at 381, 102 S.Ct. 2485). *See also United States v. Meyer,* 810 F.2d 1242, 1246 (D.C.Cir.), *vacat-*

ed en banc, 816 F.2d 695, and reinstated en banc sub nom. Bartlett ex rel. Neuman v. Bowen, 824 F.2d 1240, 1241–42 (D.C.Cir. 1987) (noting that the United States Supreme Court has "declined to adopt a per se rule that in the pretrial context no presumption of vindictiveness will ever lie").

*Establishing a Prosecutorial Vindictiveness Claim*

{10} In light of *Stevens*, we hold that to establish a claim of vindictive prosecution, "the defendant must show either: (1) actual vindictiveness or (2) a reasonable likelihood of vindictiveness, which *then* raises a presumption of vindictiveness." *Contreras*, 108 F.3d at 1262 (emphasis added). "Once the defendant successfully establishes either, the burden shifts to the prosecution to justify its decision with 'legitimate, articulable, objective reasons.'" *Id.* at 1262–63 (quoted authority omitted). "If the defendant is unable to prove actual vindictiveness or a realistic likelihood of vindictiveness, a trial court need not reach the issue of government justification." *Id.* at 1263. Our focus in analyzing a claim of prosecutorial vindictiveness is on whether the prosecutor has done an act "'that would not have occurred but for hostility or punitive animus toward the defendant *because he exercised [a] specific legal right.*'" *Id.* at 1262 (quoted authorities omitted).

*Whether The District Attorney Acted Vindictively Against Brule*

{11} In this case, the district court apparently concluded that because Brule exercised his right to "not plead guilty to misdemeanors" in metropolitan court, the District Attorney, in dismissing those charges and instead securing felony indictments against Brule, must have been seeking to punish Brule for forcing the matter to go to trial. Clearly, the evidence of the District Attorney's charging decision does not establish actual vindictiveness but rather goes to whether a realistic likelihood of vindictiveness exists. By itself, the District Attorney's decision to pursue felony charges in district court after filing a nolle prosequi on the initial misdemeanor charges does not suggest a likelihood of vindictiveness. *See Brule*, 1997–NMCA–073, ¶ 14, 123 N.M. 611, 943 P.2d 1064 (citing *Duncan*, 117 N.M. at 411, 872 P.2d at 384); *see also Goodwin*, 457 U.S. at 381, 102 S.Ct. 2485 (stating that the "invocation of procedural rights is an integral part of the adversary process" such that, at the pretrial stage, it is "unrealistic to assume that a prosecutor's probable response to such [acts] is to seek to penalize and to deter"). The majority of the Court of Appeals, however, held that, "given the other evidence in this case," the District Attorney's charging decision "could have reasonably raised suspicions on the part of the trial court." *Brule*, 1997–NMCA–073, ¶ 14, 123 N.M. 611, 943 P.2d 1064. We disagree.

{12} Of all the "other" evidence of prosecutorial vindictiveness cited by the district court and the Court of Appeals, only one fact involved the prosecutor—his alleged deceptive treatment of the victim. The victim "was under the impression that the charges would be dismissed" in metropolitan court after she told the prosecutor "that she did not want to continue with the prosecution because of the adverse impacts it would have on the parties' son and because the alleged victim did not perceive herself to be a victim of domestic violence." *Brule*, 1997–NMCA–073, ¶ 4, 123 N.M. 611, 943 P.2d 1064. The victim also complained that someone in the District Attorney's office told her that she "would be arrested if she did not testify before the Grand Jury." *Id.* ¶ 30 (Bosson, J., dissenting). As Judge Bosson noted in his dissent, however, the district court "never found that the [D]istrict [A]ttorney lied to the victim about dismissal," nor was there any evidence that he "promised not to file new charges after reassessing the evidence." *Id.* Judge Bosson further noted that "witnesses who ignore subpoenas may face criminal penalties just as the prosecutor advised Ms. Brule." *Id.; see* NMSA 1978, § 31–6–12(A) (1979) (outlining subpoena power); Rule 1–045(E) NMRA 1999 (providing that failure to obey a subpoena may be deemed contempt). Additionally, the State points out in its brief to this Court the long-standing rule that a victim of a criminal offense does not have the authority to direct the course of

a public prosecution. *See Commonwealth v. Cundiff,* 149 Ky. 37, 147 S.W. 767, 768 (1912) (deciding that a judge may not dismiss valid indictment even where injured party so requests); *State v. Frazier,* 27 So. 799, 800 (La.1900) (declining to require prosecuting officer to file nolle prosequi on demand of person who initiated criminal complaint). A more recent and more general statement of the law is simply that, "[a]bsent a controlling statute or court rule, the power to enter a nolle prosequi before the jury is impaneled and sworn resides in the sole discretion of the prosecuting officer." 21 Am.Jur.2d *Criminal Law* § 779 (1998). We hold that the evidence regarding the District Attorney's alleged mistreatment of Ms. Brule does not support a claim for prosecutorial vindictiveness.

{13} The rest of the evidence adduced by the district court went to the merits of the prosecutor's complaint against Brule. As summarized by the Court of Appeals, this evidence concerned (1) the tension in the Brules' relationship at the time of the alleged incident, (2) the uniqueness of the incident in their relationship, (3) the alleged exaggeration of the event to the police by a friend of Ms. Brule, (4) the fact that the Brules were no longer married, and (5) the potentially detrimental impact of continued prosecution on their ability to parent their son. *See Brule,* 1997–NMCA–073, ¶¶ 5, 13, 123 N.M. 611, 943 P.2d 1064. Additionally, we specifically note the following district court findings:

21. The Defendant and Ms. Brule are now divorced; however they have a son, Michael, who was three and a half years old at the time of the hearing.

22. Ms. Brule is an educated woman of greater than average intelligence who understands the cycle of abuse in domestic violence and does not consider herself a victim of domestic violence.

23. Ms. Brule has not been intimidated or influenced in any way by the Defendant to request dismissal of these charges.

\* \* \* \* \*

25. Before, during and after the incident, Defendant and Ms. Brule were in marriage counseling with Dr. Craig Pierce, Ph.D.

26. In the course of her counseling, Ms. Brule never expressed any fear of physical violence from the Defendant.

27. Violence was never a concern during the course of counseling with Dr. Pierce.

28. Dr. Barbara Leviton, Ph.D., counseled Michael after the incident.

\* \* \* \* \*

30. Dr. Leviton did not see any signs of domestic violence on the part of the Defendant.

31. Dr. Leviton believes that a trial "might serve to strain the working relationship (between the Defendant and Ms. Brule)."

32. Ms. Brule recognizes the need to be able to work together with the Defendant for the sake of their son.

33. This combined effort for the good of their son cannot continue if this prosecution is allowed to proceed.

All of this evidence provides reasons—perhaps exceedingly good ones—for the prosecutor to drop the charges against Brule. This evidence might well persuade a jury not to convict Brule.

{14} However, as Judge Bosson observed in his dissent, "it is the [D]istrict [A]ttorney who is elected by the people of this state to decide this very question of what charges to bring and what people to prosecute in the best interest of the people of the State of New Mexico." *Id.* ¶ 31. A district court should not dismiss a case in which a grand jury has found probable cause simply because the district court views continued prosecution as "pointless" or "contrary to basic common sense," as was done here. *Id.* ¶ 26. *See Bordenkircher,* 434 U.S. at 364, 98 S.Ct. 663 ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Although the district court is

certainly entitled to its opinion that the District Attorney in this case "exercised extremely poor judgment," a simple fiat from the bench does not make a prosecution "vindictive at some level," as was decided here. *Brule*, 1997–NMCA–073, ¶¶ 26–27, 123 N.M. 611, 943 P.2d 1064. We hold that the merits of a prosecution may not be weighed in determining whether prosecutorial vindictiveness exists.

{15} Because we hold that the evidence does not support a judgment of actual vindictiveness or a reasonable likelihood of vindictiveness, we reverse the Court of Appeals' decision that the State was required to explain its continued prosecution. *See Contreras*, 108 F.3d at 1263. We note that the majority relied heavily on *State v. Bolton*, 1997–NMCA–007, 122 N.M. 831, 932 P.2d 1075 for its conclusion that once a defendant raises the issue of "prosecutorial bad motives," the State "bears the burden of demonstrating the bona fides of its procedure," *Brule*, 1997–NMCA–073, ¶¶ 12 & 10, 16, 123 N.M. 611, 943 P.2d 1064 (also citing *State ex rel. Delgado v. Stanley*, 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972)). *Bolton* and *Stanley* are distinguishable.

{16} Both *Bolton* and *Stanley* involved allegedly improper prosecutorial attempts to evade the six-month rule. The six-month rule puts a near-absolute time limit on prosecutorial discretion in pursuing a case, lifted only for a maximum of three months by the trial judge or upon an express extension from this Court. *See* Rule 5–604(B)–(F) NMRA 1999. There is no similarly rigid limitation on a prosecutor's initial discretion regarding whether or not to bring charges against a criminal defendant. To be sure, a prosecutor may not retaliate against a defendant for exercising protected rights. As is evident from the procedural history of this case, however, determination of whether a prosecutor has acted vindictively is a much less sure matter than ascertaining whether six months have elapsed. For this reason, the threshold level for requiring an explanation from the prosecutor is appropriately higher in this type of case; that is, only upon a showing of actual vindictiveness or a rea-

sonable likelihood of vindictiveness. *See Contreras*, 108 F.3d at 1262. We decline to extend *Bolton* and *Stanley* beyond their facts. This case does not involve the six-month rule, and therefore those cases are not applicable.

{17} Finally, the State argues as alternative grounds for reversal that the district court's decision violates state constitutional separation of powers principles, infringes on the grand jury's right to determine probable cause, and undermines the federal Constitution's provision for a republican form of government. None of these precepts, however, justify depriving a defendant of his or her due process right to be free from vindictive prosecution. *See* U.S. Const. amend. XIV, § 1 (Due Process Clause); *id.* art. VI, cl. 2 (Supremacy Clause). Hence, the State's arguments are unavailing. We reverse the district court solely on the ground that there is here neither evidence of actual vindictiveness nor a sufficient showing of a reasonable likelihood of vindictiveness.

## CONCLUSION

{18} For the reasons discussed above, we reverse the judgment of the district court dismissing this prosecution. The felony charges against Brule are accordingly reinstated. It rests within the discretion of the District Attorney whether or not to pursue those charges.

{19} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, and SERNA, JJ., concur.