This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37033**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JULIAN SELPH,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Julian Selph (Defendant) appeals following two separate jury trial convictions, which were informally consolidated by agreement into one judgment and sentence for purposes of sentencing. Defendant's appeal focuses on convictions in his second jury trial wherein he was convicted of one count of criminal sexual contact of a minor (CSCM) under thirteen, pursuant to NMSA 1978, Section 30-9-13(B)(1) (2003); twelve counts of criminal sexual penetration (CSP) of a child under thirteen, pursuant to NMSA

1978, Section 30-9-11(D)(1) (2009); seven counts of criminal sexual contact of a minor (Person in Position of Authority (PPA)), pursuant to Section 30-9-13(B)(2)(a); and one count of bribery or intimidation of a witness, pursuant to NMSA 1978, Section 30-24-3 (1997).[1] Defendant argues that (1) M.S.'s (Victim) therapist improperly bolstered Victim's testimony; (2) the therapist's testimony was minimally probative and irrelevant; (3) there was insufficient evidence to support Defendant's convictions and the charges violated his due process and double jeopardy rights; and (4) there was vindictive prosecution.[2] We affirm.

## BACKGROUND

**{2}** On April 24, 2015, at the age of thirteen, Victim threw herself out of a moving truck, because her father, Defendant, was angry and she feared he was going to kill her. Defendant drove away and was later stopped and ultimately charged with driving under the influence and child abuse in his first jury trial. A passing female motorist stopped to assist Victim and took her to the local hospital, where Victim revealed that Defendant had sexually abused her. A few days later, during safe house interviews, Victim revealed the details of the sexual abuse, which began when she was about six years old.

**{3}** At trial, the State presented testimony from Victim, Victim's mother, a police detective, a crime scene investigator, as well as expert testimony from a forensic scientist and Victim's therapist. Ultimately, Defendant was convicted of all the charges in the second jury trial and sentenced to a total term of imprisonment of three hundred and forty-two years and three months followed by an indeterminate term of parole, based on Defendant's convictions in both jury trials.

**{4}** Because the parties are familiar with the factual and procedural background, we reserve any further discussion of both as is necessary to our analysis.

## I.      The Admission of the Therapist's Testimony Was Proper

**{5}** We begin by addressing whether the district court plainly erred in admitting expert testimony that Victim's behaviors were consistent with a child who has experienced sexual trauma. Defendant argues that the testimony given by Victim's therapist "constituted improper bolstering that was highly prejudicial and warrants reversal." We disagree.

---

[1]Defendant was also convicted of child abuse and driving while intoxicated in the first jury trial, D-1116-CR-2015-00450, however, the appeal focuses on the CSCM, CSP, CSCM (PPA) charges in his second jury trial, D-1116-CR-2015-00444.

[2]Defendant also raises the issue of ineffective assistance of counsel, but states that the matter is best addressed in a habeas proceeding. We agree. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

**{6}** Because the issue was unpreserved, we review for plain error. *See* Rule 11-103(E) NMRA (stating that the doctrine of plain error applies to evidentiary matters and permits a court to "take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved"). "The plain-error rule . . . applies only if the alleged error affected the substantial rights of the accused." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). Moreover, this Court "must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). "[W]e . . . examine the alleged errors in the context of the testimony as a whole." *Id.* (internal quotation marks and citation omitted).

**{7}** Defendant contends that the therapist's testimony that Victim's behavior was "consistent" with sexual abuse improperly bolstered Victim's credibility and that the State's line of questioning repeatedly emphasized Victim's credibility and unnecessarily extended the therapist's opinion. Defendant also argues that the therapist's testimony regarding signs of trauma that were consistent with sexual abuse and testimony regarding other causes of trauma were minimally probative and highly prejudicial, and therefore should have been excluded as irrelevant evidence.[3] The portion of the therapist's testimony at issue is as follows:

> State: So you have been treating [Victim], correct?
>
> Therapist: I have.
>
> State: And you've observed her behaviors?
>
> Therapist: I have.
>
> State: And are [Victim's] behaviors consistent with a child who has experienced trauma?
>
> Therapist: Yes.
>
> State: Are her behaviors consistent with a child who has experienced sexual trauma?
>
> Therapist: Yes ma'am.
>
> State: And you have talked about differences in it being over duration?
>
> Therapist: Yes.

---

3For the first time in his reply brief, Defendant challenges the expert's passing reference that Victim's treatment was "related to sexual abuse." "[T]he general rule is that we do not address issues raised for the first time in a reply brief[.]" *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65). We, therefore, limit our analysis to arguments properly raised in Defendant's brief in chief.

State: Are her behaviors consistent with a child who has experienced sexual trauma over a long duration?

Therapist: Yes, ma'am.

State: Are her behaviors consistent with a child who has experienced intense sexual trauma?

Therapist: Yes, ma'am.

State: Are her behaviors consistent with a child who has experienced severe sexual trauma?

Therapist: Yes, ma'am.

State: And are you treating her for this?

Therapist: Yes.

**{8}** We conclude that the therapist's testimony was proper under our jurisprudence regarding expert opinion testimony. *See State v. Alberico*, 1993-NMSC-047, ¶¶ 84, 88 116 N.M. 156, 861 P.2d 192 (holding that expert opinion testimony is admissible to establish that the alleged victim suffered from post-traumatic stress disorder (PTSD) consistent with sexual abuse but inadmissible to establish that the alleged victim is telling the truth or identify the alleged perpetrator). *Alberico* is directly on point. The expert in that case was likewise examined outside the presence of the jury initially, the judge determined that the expert could testify about PTSD, and the expert's testimony was limited to her evaluation of the victim's symptoms as "PTSD consistent with someone who suffered from sexual abuse or rape." 1993-NMSC-047, ¶ 10. Moreover, the expert in *Alberico* "did not identify [the defendant] as the probable perpetrator or inculpate him in any way" nor "establish that the alleged victim is telling the truth" and thereby did not disturb "the jury's function as arbiter of the witnesses' credibility." *Id.* ¶¶ 10, 84, 88. Our Supreme Court further explained "[i]ncidental verification of [the] victim's story or indirect bolstering of her credibility, however, is not by itself improper" since "[a]ll testimony in the prosecution's case will tend to corroborate and bolster the victim's story to some extent[;]" however, "[d]irect comments on [the] victim's credibility" is "beyond the scope of permissible expert testimony." *Id.* ¶ 89.

**{9}** In the present case, the therapist never stated that she believed Victim was credible nor did she identify Defendant as the perpetrator of the trauma. Defendant points to the State's line of questioning as adding "emphasis" to Victim's credibility in order to distinguish the case from *Alberico*, but we are unpersuaded. The therapist responded affirmatively to a line of questioning concerning whether Victim's symptoms were consistent with sexual abuse, as permitted by *Alberico. See* 1993-NMSC-047, ¶ 10. The expert did not state that the symptoms were *in fact* caused by sexual abuse, and even provided other potential causes of trauma including "physical abuse,

emotional neglect, and verbal abuse." *See State v. Salazar*, 2006-NMCA-066, ¶ 8, 139 N.M. 603, 136 P.3d 1013 (stating that an expert may "give testimony regarding symptoms that the victim suffers that are consistent with sexual abuse" but not testimony "to establish . . . that the symptoms were in fact caused by sexual abuse."). Accordingly, the therapist's testimony did not improperly bolster Victim's testimony.

**{10}** We also are unpersuaded by Defendant's arguments that the expert testimony was irrelevant and highly prejudicial and therefore should have been excluded under Rules 11-401 and 11-403 NMRA. In *Alberico,* our Supreme Court held that "testimony regarding a [victim]'s PTSD symptoms has the tendency to show that she might have been sexually abused" and is indeed probative. 1993-NMSC-047, ¶ 76. "The fact that evidence prejudices [the] defendant is not grounds for its exclusion." *State v. Watley*, 1989-NMCA-112, ¶ 23, 109 N.M. 619, 788 P.2d 375. To weigh against admission, the prejudice must be of a kind that is unfair. *See State v. Otto*, 2007-NMSC-012, ¶ 16, 141 N.M. 443, 157 P.3d 8 ("The purpose of [Rule] 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice."). And the unfair prejudicial effect must substantially outweigh its probative value. *See State v. Salgado*, 1991-NMCA-111, ¶ 11, 112 N.M. 793, 819 P.2d 1351 (citing Rule 11-403). The therapist's testimony here, like in *Alberico*, was probative to show that Victim might have been sexually abused and the probative value was not substantially outweighed by any unfair prejudicial effect.

**{11}** As to Defendant's argument that the therapist's testimony regarding other possible causes of trauma is irrelevant, we disagree. Such testimony goes directly to the question of whether or not Victim's trauma stemmed from sexual abuse or other potential causes. *See* Rule 11-401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."); *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 37, 127 N.M. 47, 976 P.2d 999 ("Evidence is relevant if it tends to make a fact in issue more or less probable and any doubt should be resolved in favor of admissibility.").

**{12}** Therefore, we conclude that the district court did not abuse its discretion by admitting the therapist's testimony.

## II.    There Was No Due Process Violation

**{13}** Defendant next argues that the multiplicative charging resulted in due process and double jeopardy violations because there was insufficient evidence to distinguish between the counts. We pause to note that Defendant's arguments regarding due process and double jeopardy were unclear and underdeveloped as they were embedded within his arguments regarding the insufficiency of evidence. None of Defendant's arguments on these two issues were fully and properly articulated. As a result, we are unable to fully discern Defendant's arguments. While Appellate courts are under no obligation to review unclear or undeveloped arguments, *see State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031, to the extent we understand Defendant's

arguments, we address whether the multiple charges differentiated only by monthly intervals violated his due process and double jeopardy rights. We review due process and double jeopardy challenges de novo, "deferring to the district court's findings of fact when they are supported by substantial evidence." S*tate v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834; *see also State v. Lente*, 2019-NMSC-020, ¶ 14, 453 P.3d 416.

**{14}**   Defendant cites *Dominguez* for the proposition that a lack of specificity in indictments and a victim's testimony violate due process and double jeopardy. *See Dominguez*, 2008-NMCA-029, ¶ 4. "[R]esident child molester" cases such as Defendant's present unique challenges, as our Supreme Court noted in its recent decision in *Lente*, 2019-NMSC-020, ¶ 1. "The child victims in these cases are usually the sole witnesses of the crimes perpetrated and, because of their age and the frequency of the sexual abuse to which they are subjected, cannot provide detailed accounts of the abuse but only generalized accounts of frequent sexual contact with the defendant." *Id.* Defendant contends that, as in *Dominquez*, the State only presented evidence of an ongoing pattern of abuse instead of eliciting testimony from Victim on specific instances of conduct. *See Dominguez*, 2008-NMCA-029, ¶ 4. Defendant further argues that the State's "indistinguishable subsets of charging periods" as opposed to a longer charging period does not remedy the lack of specificity and the insufficiency of evidence for each of the counts. Given our Supreme Court's recent clarification on resident child molester cases in *Lente*, we disagree. *See generally* 2019-NMSC-020, ¶ 1.

**{15}**   The charges at issue in the sixth amended criminal Information are as follows[4]:

| Counts | Degree | Charge | Date Range |
|--------|--------|--------|------------|
| 3 | 1st | CSP (under 13) | 9/1/13 - 12/30/13 |
| 4 | 1st | CSP (under 13) | 10/1/13 - 10/31/13 |
| 5 | 1st | CSP (under 13) | 11/1/13 - 11/30/13 |
| 6 | 1st | CSP (under 13) | 12/1/13 - 12/31/13 |
| 7 | 1st | CSP (under 13) | 1/1/14 - 2/28/14 |
| 8 | 1st | CSP (under 13) | 3/1/14 - 3/31/14 |
| 9 | 1st | CSP (under 13) | 4/1/14 - 4/30/14 |
| 10 | 1st | CSP (under 13) | 5/1/14 - 5/31/14 |
| 11 | 1st | CSP (under 13) | 6/1/14 - 6/30/14 |

---

4Defendant does not dispute the sufficiency of evidence for Count 1, CSCM in the second degree between 6/1/08 and 12/31/10, Count 2, CSP in the first degree between 1/1/11 and 8/31/13, and Count 21, bribery or intimidation of a witness in the third degree, between 5/1/11 and 3/31/12. Defendant also does not dispute Count 14, CSCM (PPA), however, he asserts that only one count should have been charged during the entire period between 9/1/14 and 4/25/15.

| 12 | 1st | CSP (under 13) | 7/1/14 - 7/31/14 |
|----|-----|----------------|------------------|
| 13 | 1st | CSP (under 13) | 8/1/14 - 8/30/14 |
| 14 | 2nd | CSCM (PPA) | 9/1/14 - 9/30/14 |
| 15 | 2nd | CSCM (PPA) | 10/1/14 - 10/31/14 |
| 16 | 2nd | CSCM (PPA) | 11/1/14 - 12/31/14 |
| 17 | 2nd | CSCM (PPA) | 1/1/15 - 1/31/15 |
| 18 | 2nd | CSCM (PPA) | 2/1/15 - 2/28/15 |
| 19 | 2nd | CSCM (PPA) | 3/1/15 - 3/31/15 |
| 20 | 2nd | CSCM (PPA) | 4/1/15 - 4/25/15 |

Before trial, the district court denied Defendant's motion to dismiss all counts except Counts 1 (CSCM), 2 (CSP), 14 (CSCM (PPA)), and 21 (bribery or intimidation of a witness), stating that all the counts charged were "differentiated, distinguished and identified by date" so that Defendant was "placed on notice about exactly when the acts are alleged to have occurred enabling him to mount his defense and satisfying his right to due process." The district court also explained that when a victim cannot "testify to specific dates or identifying features or identifying circumstances of the alleged criminal conduct[,]" our case law does not require the State "to charge only one count simply because a criminal act is repeated over and over again."

**{16}** We agree with the district court's reasoning, and we consider the present case distinguishable from *Dominguez* because each charge is differentiated by date and sufficiently narrow such that Defendant had proper notice to prepare his defense. *Dominguez*, 2008-NMCA-029, ¶ 4. Due process requires that the State "provide reasonable notice of charges against a person and a fair opportunity to defend . . . [and] the ability to protect themselves from double jeopardy." *Dominguez*, 2008-NMCA-029, ¶ 5 (internal quotation marks and citations omitted); *see also State v. Baldonado*, 1998-NMCA-040, ¶ 26, 124 N.M. 745, 955 P.2d 214 (providing a multifactor test to evaluate the reasonableness of the "[s]tate's efforts at narrowing the time of the indictment and [to measure] the potential prejudice to the defendant of the time frame chosen by the [s]tate").

**{17}** In *Dominguez*, the ten counts of CSCM charged against the defendant were indistinguishable from one another because they were exactly the same in every respect, including the date range. *Dominguez*, 2008-NMCA-029, ¶¶ 1, 4. Concluding that the charges violated both due process and double jeopardy, this Court affirmed the dismissal of five counts for lack of specificity. *Id*. Here, however, the counts were distinguished by monthly intervals, and although the State presented evidence that the sexual abuse occurred every weekend, it elected to only charge one count for every month or two month period that Defendant had custody of Victim on the weekends. *State v. Lente*, 2019-NMSC-020 ¶ 22 (holding that the state's decision to charge by six-month intervals was not "flawed or in any way unlawful"). Also, contrary to Defendant's contention that the State's evidence lacks specificity, Victim testified with sufficient

particularity as to the escalating nature of the sexual abuse. *See infra* Section IV. In addition, although not argued by Defendant, our review of the *Baldonado* factors confirms that the State's indictment was sufficiently particular. *See* 1998-NMCA-040, ¶¶ 27, 29. Furthermore, Defendant has not presented any evidence to demonstrate that he was unsure of the charges he faced or somehow precluded from defending himself. *See id.* ¶ 20.

**{18}** We conclude there was no due process violation because the State properly exercised discretion in electing the charges to prosecute and providing reasonable notice of the charges to Defendant. We find support for our conclusion in our Supreme Court's observation that

> while there is no hard and fast principle controlling how the [s]tate may elect to divide the time during which sexual abuse occurs in resident child molester cases, the absence of such a principle in no way precludes line drawing. That line drawing is often necessary and an appropriate exercise of the [s]tate's authority to prosecute resident child molesters in a manner that correctly reflects condemnation of lengthy and repeated sexual abuse of children.

*Lente*, 2019-NMSC-020 ¶ 24.

### III. There Was No Double Jeopardy Violation

**{19}** Consistent with our determination that Defendant received proper notice of the charges, we similarly conclude that there was no double jeopardy violation. We briefly explain.

**{20}** Multiplicity is a common objection in resident molester cases because charging several counts of the same offense raises a double jeopardy question. *Id.* ¶¶ 25-26. In analyzing a double jeopardy claim, we must determine "whether the facts undergirding each count can be treated as a distinct unit of prosecution" and "whether the Legislature intended to punish each statutory violation separately." *Id.* ¶ 26 (alteration, internal quotation marks, and citation omitted). In *Lente*, our Supreme Court recognized that "[t]here can be no question that our Legislature did indeed intend for different acts of criminal sexual penetration and contact perpetrated against a child on different and discrete dates over a course of years to constitute discrete violations of the statutes here implicated." *Id.* ¶ 30. The Court then explicitly concluded that, "multiplicity [was] not a concern in [the] case." *Id.* The defendant's indictment in *Lente* alleged that "he engaged in specific sex acts with [the victim] during specific, consecutive, six-month intervals" with "no specific form of sexual abuse . . . alleged to have occurred more than once in any given interval." The Court ultimately held that the "interval" charging practice avoided the problem of "carbon-copy" counts, or counts that are "in no way differentiated from one another[,]" and concluded such differentiation avoided any notice objections to the indictment and therefore, any double jeopardy question. *Id.* ¶¶ 47-49.

For the same reasons relied upon in *Lente*, we hold there was no double jeopardy violation in Defendant's case.

## IV.     There Was Sufficient Evidence for Each Conviction

**{21}**     Defendant relatedly argues that there was insufficient evidence to support his convictions for one count of CSCM, twelve counts of CSP, and seven counts of CSCM (PPA), and contends that there should have been only three counts charged for the entire period of alleged sexual abuse. We are unpersuaded.

**{22}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. We do not reweigh the evidence or substitute our judgment for that of the fact finder" when there is sufficient evidence to support the verdict. *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "The jury is free to reject [the d]efendant's version of the facts[,]" and "this Court cannot consider the merit of evidence that may have supported a different result." *Id.*

**{23}**     Defendant concedes that there is sufficient evidence for three counts—one count of CSCM, one count of CSP, and one count of CSCM (PPA). However, he claims there was insufficient evidence to establish Counts 3-13 of CSP and Counts 14-20 of CSCM (PPA) as charged in the sixth amended criminal information because Victim's testimony did not specify dates or otherwise distinguish between the counts. We disagree.

**{24}**     Victim testified that every weekend, starting on Friday and ending on Sunday, she visited Defendant. During these visits, he would touch her, force her to perform oral sex on him, touch and "rub his balls," and he would "jack off" into the crack between the beds. Victim also stated that the sexual abuse would occur about twice a weekend, sometimes more than once a night after the custody arrangement changed. *See Lente*, 2019-NMSC-020, ¶ 69 (holding that statements "that specific acts of sexual abuse occurred 'twice a month' or 'every time [the victim and the defendant] went camping' are sufficient" to establish the number of proscribed acts committed to support each of the counts alleged in the indictment). Here, the State charged only one count for every month or two months during the period at issue (when Defendant had custody of the Victim on weekends), and Victim testified that the conduct occurred every weekend, which is sufficient to establish the number of charges in the indictment. Victim's mother thereafter clarified that the custody agreement was modified in September 2013 such that Victim visited Defendant on the weekends and stated that Defendant never went a full month without exercising his visitation. Although some of Victim's responses regarding the sequence of sexual acts or her age during specific instances suggested a lack of certainty, we disregard all inferences contrary to upholding the verdict. *State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 ("This Court evaluates the sufficiency of the evidence . . . viewing the evidence in the light most favorable to the verdict, resolving all

conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." (internal quotation marks and citation omitted)). Moreover, as a matter of public policy, we refuse to render "a child victim's testimony [as] per se insufficient to support convictions in resident child molester cases" because such "effectively insulates the most egregious child molesters from prosecution for multiple crimes . . . and creates an atmosphere where 'one act offenders' are treated in the same manner as repeat molesters." *Lente*, 2019-NMSC-020, ¶ 62 (internal quotation marks and citation omitted).

**{25}** In addition, the testimony of the forensic scientist and the police detective also corroborated Victim's testimony since the house and the mattresses were found exactly as described. The portion of the mattress into which Defendant ejaculated according to Victim's statements, was found to be saturated with semen, and the DNA matched Defendant's. Viewing the evidence in the light most favorable to the verdict and disregarding all evidence and inferences to the contrary, we conclude that the evidence suffices to uphold all of Defendant's convictions. *Gipson*, 2009-NMCA-053, ¶ 4.

## V.      There Was No Vindictive Prosecution

**{26}** Defendant next contends that there was vindictive prosecution because the State charged additional counts allegedly in retaliation after Defendant rejected a plea deal. We are unpersuaded.

**{27}** Because Defendant raises the issue of vindictive prosecution for the first time on appeal, it is unpreserved, and we review only for fundamental error. *See* Rule 12-321 (B)(2) NMRA (providing appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights). Fundamental error "must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive" and applies "only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted).

**{28}** "[T]o establish a claim of vindictive prosecution, [D]efendant must show either: (1) actual vindictiveness or (2) a reasonable likelihood of vindictiveness, which then raises a presumption of vindictiveness." *State v. Brule*, 1999-NMSC-026, ¶ 10, 127 N.M. 368, 981 P.2d 782 (emphasis, internal quotation marks, and citation omitted). If Defendant establishes either prong, the burden shifts to the State "to justify its decision with legitimate, articulable, objective reasons." *Id.* (internal quotation marks and citation omitted). The central inquiry is whether the prosecutor committed an act "that would not have occurred but for hostility or punitive animus toward the defendant *because he exercised a specific legal right*. *Id.* (alteration, internal quotation marks, and citation omitted).

**{29}** Defendant states that the specific legal right which prompted the additional charges was Defendant's exercise of his "right to a jury trial," and emphasized that "the

prosecutor acknowledged that as the reason for the amendment." in this regard, however, Defendant points only to the prosecutor's statement to the district court that "[Defendant] was supposed to [plead guilty] to those two [(one count of CSP and one count of CSCM)], [was] told that if he didn't it would be amended; [and then] it was amended." The State answers that the comment related to a "bind-over offer" wherein the State offered not to file the remainder of the charges in exchange for a plea of guilty to the two-count original indictment. However, the prosecutor's statement alone is not conclusive of actual vindictiveness nor of a reasonable likelihood of vindictiveness.

{30}    Again, we are guided by our Supreme Court, which rejected the presumption of vindictiveness at the pretrial stage when a defendant exercised a right that resulted in his then facing a more serious charge, holding that the State is not required to "press the severest charges possible at the outset" of prosecution. *State v. Stevens*, 1981-NMSC-094, ¶ 18, 96 N.M. 627, 633 P.2d 1225 ("Imposition of a pretrial presumption of vindictiveness would interfere with proper prosecutorial discretion . . . Prosecutors might feel compelled to press the severest charges possible at the outset, to the detriment of defendants."). As well, in *Brule*, our Supreme Court held that the state did not engage in vindictive prosecution when the defendant exercised his right to reject the plea for misdemeanor charges, and the state proceeded to secure felony indictments. 1999-NMSC-026, ¶ 11; *see also State v. Coffin*, 1999-NMSC-038, ¶ 47, 128 N.M. 192, 991 P.2d 477 (holding that the prosecutor's decision to seek the death penalty after the defendant exercised a right to trial "fails to indicate any likelihood whatsoever that the [s]tate's decision is intended to punish a defendant for not pleading guilty").

{31}    Under directly applicable precedent, we conclude Defendant has not presented evidence of statements by the prosecutor which could meet the burden of creating a "reasonable likelihood of vindictiveness." We therefore reject Defendant's claim of fundamental error.

**CONCLUSION**

{32}    For these reasons, we affirm Defendant's convictions.

{33}    **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**